**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| MARIO LUNA, § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | CIVIL ACTION NO. 4:25-CV-784 |
| § | |
| TARRANT COUNTY COLLEGE § | |
| DISTRICT, § | |
| Defendant. § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Mario Luna, hereinafter called Plaintiff, complaining of and about Tarrant County College District, hereinafter called Defendant, and for cause of action shows the Court the following:

**PARTIES AND SERVICE**

1.     Plaintiff Mario Luna resides in Glenn Heights, Ellis County, Texas.

2.     Defendant Tarrant County College District (TCCD) is a community college district organized and existing pursuant to the law of the state of Texas for the purpose of operating a system of community colleges in and around Tarrant County, Texas. TCCD is a state actor within the meaning of the United States Constitution and the actions complained of herein comprise state action and were taken under color of law. The address of TCCD's administrative office is 300 Trinity Campus Circle, TRWF A18, Fort Worth, Tarrant County, Texas 76102. TCCD may be served with process by serving its chancellor, Elva LeBlanc, Ph.D at the foregoing address or where she may be found. ***Issuance of a summons is hereby requested.***

## JURISDICTION & VENUE

3. Jurisdiction is proper in this Court because this case has federal question jurisdiction over civil rights matters under 28 U.S.C. §§ 1441, 1443, and 1446 as well as 42 U.S.C. §§ 1983, 1984, and 1988   This Court has supplemental jurisdiction over state law claims discussed below under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

4. All the conduct alleged herein by Defendant was done by policymakers of the Defendant district and under the policies of the Defendant district. Such action was done under the color of law.

## NATURE OF ACTION

5. This is an employment action brought under Title VII of the Civil Rights Act of 1964 (Title VII), Age Discrimination in Employment Act (ADEA), and Chapter 21 of the Texas Labor Code, all of which prohibit employment discrimination, retaliation and hostile work environment for persons based on disability, race, color, religion, sex, national origin.

## CONDITIONS PRECEDENT

6. All conditions precedent to jurisdiction have occurred or been complied with as a charge of discrimination was filed with the Equal Employment Opportunity Commission within three hundred days of the acts complained of herein, and Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter.

## FACTS

7. Plaintiff is a foreign-born Hispanic male born in 1956 and, at all relevant times, has been over the age of 40.

8. Plaintiff began working for Defendant as a Carpenter in August 2014.

9. TCCD operates a cluster of several community college campuses around the Tarrant County area.

10. Plaintiff's position required him to travel to the various TCCD campuses around the Tarrant County area and perform carpentry duties. During these times, Plaintiff was required to work and report to different supervisors depending on which campus Plaintiff was working or located on during that time.

11. In May 2023, Plaintiff was assigned to work at TCCD's NE Campus and reported to Randy Graham.

12. It was during this time that Plaintiff began to suffer discrimination based on his race, brown skin color, his national origin and finally a hostile work environment.

13. Plaintiff worked with James Askew ("Askew"). Askew was the General Maintenance Supervisor who had issues with Plaintiff since they began working together.

14. On May 25, 2023, Plaintiff was putting up his tools as he had always done and was in the process of organizing all the tools. At this point Askew became irate that Plaintiff was moving the tools.

15. Askew immediately became irate and began to scream at Plaintiff.

16. Askew, though not Plaintiff's supervisor, tried to assert his dominance over Plaintiff by ordering him to re-position the tools and to do it on his lunch break.

17. It was at this time, that Plaintiff knew that Askew was targeting him because of he was Hispanic and because he had already indicated that he thought Plaintiff was too old to be doing maintenance work.

18. There were many examples of where Askew would target Plaintiff letting him know he was too old and too slow to be working manual labor jobs.

19. Plaintiff saw how Askew interacted with similarly situated employees of Plaintiff who were white and younger. Askew treated them significantly better always being helpful and allowing them grace in their mistakes while holding Plaintiff to a higher standard and giving him the most difficult tasks.

20. When Plaintiff complains about the treatment, Askew would then say it was because of Plaintiff's age that he could not fulfill his job duties.

21. Again, Askew never treated any of the younger white males with such hate and disdain as he did to Plaintiff, nor would he make racists and anti-Hispanic comments but did so to Plaintiff. Plaintiff told Askew to quit his behavior and not encourage others as he had done in the past.

22. In response to Askew's demand to move the tools that day, Plaintiff told Askew he would not be moving any items and that even though he was older, he could still perform his job functions and duties well.

23. Askew continued to belittle and harass Plaintiff based on his race, color, national origin, and age during his lunch break picking at Plaintiff, mocking him, and attempting to belittle him in front of the other employees.

24. After lunch, Askew, though not Plaintiff's supervisor, again ordered Plaintiff to remove and reorganize the tools.

25. When Plaintiff refused Askew began to get the tools and toss them about the room in a fit of anger that Plaintiff would not do this. The police were subsequently called but Plaintiff to avoid being assaulted by Askew left after Askew had threatened him with more physical violence.

26. The next day Plaintiff filed a complaint with TCCD Human Resources against

Askew alleging harassment, a hostile work environment based on his age, race, color and national origin as an older Latino male.

27. Plaintiff complained about discrimination and a hostile work environment to TCCD orally many times to Askew and to other management, but those complaints went unrecognized and nothing was done.

28. TCCD began its "sham" investigation and placed Plaintiff on leave.

29. Ultimately TCCD took the side of Askew and then in a wild turn of events, "gaslighted" the Plaintiff by saying that Plaintiff had violated TCCD policy and that Askew had done nothing wrong.

30. Plaintiff could not believe that this had occurred and was stunned.

31. TCCD then used this as a pre-text to unjustly and wrongly terminate Plaintiff on December 13, 2023, after nearly a decade of excellent service.

32. Plaintiff was well-qualified for his position as prior to the source of this litigation, had received no infractions or "write-ups" or any serious discipline issues.

33. Prior to working with Askew, Plaintiff enjoyed positive feedback and consistent pay increases since having initially started working for Defendant nearly a decade prior to his wrongful termination.

## AGE DISCRIMINATION (ADEA)

34. Plaintiff incorporates all preceding paragraphs herein as if set forth at length.

35. The Age Discrimination in Employment Act of 1967., 81 Stat. 602, states: "it shall be unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; or to limit, segregate, or

classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of age." *See also* Tex. Lab. Code § 21.051. The familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applies to both [Title VII claims and ADEA claims]. *Evans v. City of Houston*, 246 F.3d 344, 349 (5th Cir.2001); *Miller v. Raytheon Co.*, 716 F.3d 138 (5th Cir. 2013).

36. The case law is clear. A plaintiff must establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate some legitimate nondiscriminatory reason for its employment decision. If the defendant articulates a legitimate nondiscriminatory reason, then, the plaintiff, in order to prevail, must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

37. Within this general framework, the specifics to establish a prima facie case are outlined in the four-point *McDonnell* test. In *McDonnell*, the Court established a four-point test by which a plaintiff can show a prima facie case of discrimination. The plaintiff must show that: (1) the plaintiff belongs to a class protected by Title VII; (2) the plaintiff was qualified for his position; (3) the plaintiff, despite being qualified, was rejected; plaintiff experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

38. With respect to the first requirement, under ADEA, discrimination based on age is prohibited. During all relevant times of this discrimination, Plaintiff was over forty (40) years old, which places Plaintiff into the protected class.

39. As to the second requirement, Plaintiff was and is still qualified for his position based on (i) his past training and experience as a carpenter, (ii) his past positive performance feedback with Defendant having worked there almost a decade with his serious discipline coming as a result of the Defendant's discriminatory actions, (iii) progressive increases in salary from Defendant; and (iv) having completed all training and requirements by Defendant to further his career.

40. Despite being qualified, Plaintiff received adverse employment action of being retaliated against, hostile work environment, and ultimately unjustly terminated by the Defendant. Despite his work performance history and never having received a valid and accurate reprimand or other disciplinary action during his tenure with Defendants and the subject of this litigation, Plaintiff had been dealing with hostility and retaliation because of his age, race, color, national origin. Defendant wrongfully and discriminatorily terminated Plaintiff because of his age.

## CHAPTER 21 TEXAS LABOR CODE – HOSTILE WORK ENVIRONMENT

41. Plaintiff incorporates all preceding paragraphs herein as if set forth at length.

42. Plaintiff asserts a violation of Tex. Lab. Code 21.051 under the Texas Commission on Human Rights Act (TCHRA). The code states:

> "An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:
>
> (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or
>
> (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee."

43. A hostile-work-environment claim is designed to address conduct that is so severe or pervasive that it destroys an employee's opportunity to succeed in the workplace. *Gardner*, 414 S.W.3d at 382 (citing *City of Houston v. Fletcher*, 166 S.W.3d 479, 489 (Tex. App. Eastland 2005, pet. denied)).

44. To succeed on a TCHRA claim of hostile work environment, the complained-of conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Waffle House, Inc.*, 313 S.W.3d at 806 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)).

45. Plaintiff was subject to a hostile workplace for his race, color, and gender while working under Askew and then being treated less favorably and discriminatorily because of his race, color, national origin and his age by TCCD and its "sham" investigation. Plaintiff noticed Askew's pattern of treating younger white men more favorably. The hostility brought on by Askew peaked at the altercation in May 2023 forcing Luna to flee before Askew could physically assault Luna. Plaintiff was treated less favorably than other younger non-Hispanic coworkers that were in his same position because they would not have been terminated for being on the receiving end of Askew's threats and physical violence.

46. Defendants had actual knowledge of the hostile workplace Plaintiff endured when he made repeated comments to management. Defendants failed to properly investigate or otherwise resolve this hostile work environment.

**TITLE VII - DISCRIMINATION BASED ON RACE, COLOR, & NATIONAL ORIGIN**

47. Plaintiff incorporates by reference all the foregoing allegations in each of the paragraphs above as fully set forth herein.

48. Title VII of the Civil Rights Act of 1964 (the "Act") makes it unlawful to

discriminate against someone on the basis of race, color, national origin, sex (including pregnancy, sexual orientation, and gender identity) or religion. The Act prohibits not only intentional discrimination, but also practices that have the effect of discriminating against individuals because of their race, color, national origin, religion, or sex.

49. To establish a prima facie case of discrimination, a plaintiff must show that: (1) the plaintiff belongs to a protected class; (2) the plaintiff was qualified for his position; (3) the plaintiff, despite being qualified, was rejected; plaintiff experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "[T]he phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris*, 510 U.S. at 21 (quoting *Meritor*, 477 U.S. at 64). *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019).

50. With respect to the first requirement, Plaintiff is an above forty (40) brown Latino male, and therefore a member of a protected class.

51. Plaintiff was qualified for his position based on: (i) him remaining employed by Defendant for a significant amount of time, (ii) his positive performance feedback with Defendant prior to the issues of this litigation and dealing with Askew; and (iii) never having received any formal serious discipline until working with Askew at the NE TCCD campus location.

52. However, despite the foregoing qualifications, Plaintiff received adverse employment action in the form of being subjected to a hostile work environment and terminated

as well as discriminatory treatment based on his race, color of his skin, and gender in violation of Title VII.

53. The unlawful employment practices of Defendant, specifically failing to prevent and/or promptly correct the discriminatory behavior of Plaintiff's co-workers and managers, had a disparate and adverse impact on Plaintiff because of his race, color, and national origin. Specifically, when Plaintiff notified TCCD Human Resources and investigation began and because he had reported the discrimination Plaintiff was wrongfully terminated.

54. Defendant discriminated against Plaintiff in connection with the terms, conditions, and privileges of employment or limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive him of any employment opportunity or adversely affect his status because of Plaintiff's race, color and, sex in violation of 42 U.S.C. Section 2000.

55. Defendant classified Plaintiff in a manner that deprived her of an equal employment opportunity that was provided to employees similarly situated in violation of 42 U.S.C. Section 2000e.

56. Plaintiff alleges that Defendant discriminated against Plaintiff based on race, color, and sex with malice or with reckless indifference to the protected rights of Plaintiff.

### TITLE VII & ADEA - RETALIATION

57. Plaintiff incorporates by reference all the foregoing allegations in each of the paragraphs above as fully set forth herein.

58. A claim for retaliation is established when plaintiff demonstrates he (i) "engaged in an activity protected by Title VII; (ii) was subjected to an adverse employment action; and (iii) a causal link exists between the protected activity and the adverse employment action." *Adams v. Vaughn*, No. 3:18-CV-1109-B-BT, 2019 WL 1003845, at *3 (N.D. Tex. Feb. 12, 2019) (quoting

*Wright v. Chevron Philips Chem. Co.*, 734 F. App'x 931, 935 (5th Cir. 2018)(per curiam)). Protected activity includes complaining to supervisors about acts of unlawful discrimination. 42 U.S.C. §2000e-3(a); *Valdarez v. Lubbock Cty. Hosp. Dist.*, 611 Fed. Appx. 816, 820-21 (5th Cir. 2015)(finding that the plaintiff's report of sexual harassment to his supervisor was protected activity).

59. Plaintiff alleges he was subjected to a campaign of retaliation which included continuation of a hostile work environment, and fraudulent investigation that found the wrong party at fault and ultimately terminated Plaintiff.

60. This retaliation was and is due to Plaintiff exercising his rights by reporting unlawful, hostile, discriminatory and retaliatory treatment to TCCD Human Resources. Namely, making reports to his supervisor and Human Resources about discrimination and harassment suffered by the Plaintiff while on the job for Defendant and working with Askew.

61. Plaintiff suffered damages for which Plaintiff herein sues.

## RESPONDEAT SUPERIOR AND RATIFICATION

Whenever in this complaint it is alleged that the Defendants did any act or thing, it is meant that the Defendants' officers, agents, servants, employees or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of the Defendants or was done in the normal and routine course and scope of employment of Defendants' officers, agents, servants, employees, or representatives.

## DAMAGES

62. Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendant described hereinabove:

    a. All reasonable and necessary Attorney's fees incurred by or on behalf of

      Plaintiff;

b. All reasonable and necessary costs incurred in pursuit of this suit;

c. Front pay and back pay in an amount the Court deems equitable and just to make Plaintiff whole;

d. Inconvenience;

e. Interest;

f. Mental anguish in the past;

g. Mental anguish in the future; and

h. Loss of benefits.

## EXEMPLARY DAMAGES

104. Plaintiff would further show that the acts and omissions of Defendant complained of herein were committed with malice or reckless indifference to the protected rights of the Plaintiff. In order to punish said Defendant for engaging in unlawful business practices and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery from Defendant for exemplary damages.

## SPECIFIC RELIEF

105. Plaintiff seeks the following specific relief which arises out of the actions and/or omissions of Defendant described hereinabove:

a. Neutral job reference; and

b. An injunction against Defendants prohibiting discriminatory employment practices on the basis of disability and other protected categories.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Mario Luna, respectfully prays that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause,

judgment be entered for the Plaintiff against Defendants for damages in an amount within the jurisdictional limits of the Court; together with interest as allowed by law; costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY.**

Respectfully submitted,

/s/ Ali Crocker Russell
Ali Crocker Russell
State Bar No. 24098868
ali@cralawfirm.com

CROCKER RUSSELL & ASSOCIATES
200 W. Oak Street
Mansfield, Texas 76063
Tel: (817) 482-6570
Fax: (682) 232-1850
**ATTORNEY FOR PLAINTIFF**